NOT DESIGNATED FOR PUBLICATION

No. 117,184

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIMOTHY WATTS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed February 14, 2020.
Affirmed.

*Adam C. Peer*, of The Law Office of Adam Peer, of Overland Park, for appellant, and *Timothy Watts*, appellant pro se.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Timothy Watts appeals the district court's denial of his K.S.A. 60-1507 motion after an evidentiary hearing on 14 issues Watts raised and its summary denial of his remaining 20 issues. Previously, a Johnson County jury convicted Watts of aggravated kidnapping in 2010. This court affirmed his conviction on direct appeal in 2012. *State v. Watts*, No. 104,669, 2012 WL 2148163, at *1 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1136 (2013). In 2014, exactly one year after the Kansas Supreme Court denied review of this court's decision, Watts timely filed this

1

motion. He generally alleged his trial counsel and appellate counsel were ineffective among other claims. Watts, in addition to his counsel's brief, filed a pro se brief. We find no error by the district court in its analysis and denial of Watts' claims. We affirm.

FACTS

The following facts are taken from this court's ruling on Watts' direct appeal:

"Prior to January 24, 2009, Watts and Melanee Radenberg had an on-and-off relationship which involved domestic violence. On the night of January 24, 2009, Watts and Radenberg went to a bar to celebrate the birthday of one of Radenberg's friends. During the drive home, someone called Radenberg's phone . . . .

"When they arrived at Radenberg's apartment in Overland Park, Watts went back to the bedroom. While he was in her bedroom, Radenberg took her pepper spray out of her purse. Watts came out of the bathroom, saw that Radenberg had the pepper spray in her hands, and began yelling at her. He came towards her as if he was going to hurt her and she started spraying the pepper spray, but she ended up getting it all over herself instead. . . . As she was washing her face, Watts told her that they needed to leave because the police were on their way. She told Watts that the police were not coming and told him that she would not leave. . . . Watts then grabbed Radenberg by her hair, pulling her away from the kitchen sink, at which point, Radenberg agreed to go with him. Radenberg did not want to leave with Watts, but she felt that she did not have any other choice because she was afraid of what Watts would do to her if she did not leave with him.

"Watts and Radenberg walked to her vehicle. Watts got in the driver's seat and Radenberg was in the passenger seat. While they were driving, a man called Radenberg's phone. At this point, Watts had her phone and asked why a man was calling her. Radenberg said she did not know why, and Watts began to punch her in the face. . . . Radenberg was able to kick Watts, unlock her door, and get out of the car. Watts ran after her, caught her, and pulled her to the ground. Radenberg was screaming for help and Watts backed off, said he was sorry, and asked her to get back in the car. As Watts was walking back to the car, Radenberg began to run away again. She ran to some police

2

officers and one of them attempted to chase Watts, but was not able to catch him as he fled the scene. *Watts*, 2012 WL 2148163, at *1.

The State charged Watts with aggravated kidnapping and domestic battery. Initially, Watts retained Angela Hasty to represent him, and she represented him at his preliminary hearing.

At the preliminary hearing with Watts present, Officer Kerry Hawes and Radenberg testified. On the night of the incident, Hawes conducted a video interview with Radenberg in her police vehicle (Hawes Video). Hawes testified during the interview Radenberg told her Watts "drag[ged] her and pull[ed] her by her hair outside the apartment to the vehicle." Radenberg provided disputed testimony on this point. When asked whether she remembered telling the police Watts dragged her out of the apartment by her hair, Radenberg responded, "No." Watts was bound over for trial and entered his plea of not guilty.

In May 2009, the district court allowed Hasty to withdraw from the case and the court appointed a public defender to represent Watts. On December 9, 2009, Hasty reentered her appearance and the public defender withdrew from the case. On January 14, 2010, about two weeks before trial, David Smith entered his appearance as retained cocounsel. Together, Hasty and Smith represented Watts at his jury trial.

Before trial, the State filed an amended complaint and dismissed Watts' domestic battery charge. The jury convicted Watts of aggravated kidnapping. The district court sentenced Watts to a mitigated sentence of 554 months' imprisonment to run consecutive to a sentence in another case.

A panel of this court affirmed Watts' conviction on direct appeal. The Kansas Supreme Court denied review. See *Watts*, 2012 WL 2148163. Exactly one year later, Watts timely filed a motion under K.S.A. 60-1507 through appointed counsel.

Watts raised 34 discrete claims in his K.S.A. 60-1507 motion. His claims fall into six general categories, including: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) prosecutorial misconduct, (4) juror misconduct, (5) being denied his constitutional right to testify on his own behalf, and (6) cumulative trial error. Relevant to this appeal, Watts specifically argued Smith's representation during the plea negotiation process was constitutionally ineffective because he did not discuss the Hawes Video with him or advise him on whether to accept the State's plea offer. He also argued his counsel on direct appeal was ineffective because she did not argue the prosecutor committed misconduct—now called prosecutorial error—during closing argument.

The district court set an evidentiary hearing on Watts' claims. Before the evidentiary hearing, the State filed a written response to Watts' K.S.A. 60-1507 motion and asked the district court to summarily deny many of Watts' claims because they were either conclusory allegations or were improperly raised in a K.S.A. 60-1507 motion.

The district court addressed the State's motion to dismiss at Watts' evidentiary hearing. Watts appeared in person and through his court-appointed counsel at the hearing. The parties stipulated to the admission of the Hawes Video. The district court asked Watts' counsel to expand on some of the claims asserted in Watts' motion, noting they lacked specificity. The court found substantial issues existed for only 14 of Watts' claims and did not hear evidence on his remaining claims. Watts, his trial attorneys, and his appellate counsel for his direct appeal testified at the hearing.

Hasty testified about her experience as a state prosecutor, federal prosecutor, and her transition to private criminal defense practice. Smith testified he was the owner of a small law firm and practiced in civil litigation, primarily "personal injury plaintiffs, commercial, and family law." According to Smith, he represented Watts at his trial because Watts was his friend and Watts asked him to try the case for him. Smith asked Hasty to reenter the case because he "didn't do criminal law" and "would need a criminal lawyer with him."

Watts and his trial counsel testified the State had offered to allow Watts to enter a reduced plea, but the State's final offer was not admitted into evidence at the evidentiary hearing. Hasty recalled the State "offer[ed] to amend the charge to an attempted kidnapping with an offer of roughly a 10-year sentence" and to not oppose a departure motion. Smith generally recalled the State offered Watts "10 years." According to Watts, the State offered "a Level 5, mid-box sentence, [and his] attorneys [were] able to ask for a downward departure, and the State [would] not argu[e] against it."

Hasty testified how she allocated tasks in her representation of Watts with Smith. When asked about the "division of labor" between her and Smith in trying the case, Hasty responded:

> "[W]e were both pretty fully involved in reviewing evidence, and preparing, and speaking with Mr. Watts, and making determinations. I believe I probably took the lead with discussing the plea negotiations with the prosecutor. I believe Mr. Smith most likely took the lead in meeting with Mr. Watts to discuss the case, although I know that I met with Mr. Watts to discuss plea offers as well."

Hasty and Watts offered conflicting testimony about whether Hasty advised Watts to accept the State's plea offer. According to Hasty, when she discussed the State's plea offer with Watts, she advised him to accept the plea. Hasty testified she "printed off the [kidnapping] statute with the elements, and . . . went over [the statute] with [Watts]

repeatedly." She advised him there was a "good chance" he could be convicted if he opted to go to trial "based on the statute and the jurisdiction venue we were in." But Watts testified Hasty "never told [him] to take the plea." According to Watts, Hasty's only advice regarding the plea offer was "if [he] didn't physically force [Radenberg], then they [could not] find [him] guilty of kidnapping."

Smith testified he visited Watts in jail on January 20, 2010, the day the State's plea offer was set to expire. According to Smith, he reviewed all the discovery he received before meeting with Watts. Smith recalled watching a video in the prosecutor's office he believed to be the Hawes Video, but he could not recall if he had watched the video before or after he visited Watts on January 20. Smith testified the "majority" of his conversation dealt with the evidentiary impact Hawes' testimony might have at trial. He also explained to Watts the various "pros and cons" of rejecting the State's plea offer and going to trial, including the likelihood that a jury would convict him, the various means under which Watts could be convicted of aggravated kidnapping, and the evidence supporting those means: "[w]hether [Watts] forced [Radenberg] or not, like [Officer Hawes] said, whether there[] [was] any threat or not; and then, the holding her back in the car." According to Smith, Watts expressed concern Hasty was afraid to try the case. Smith assured him Hasty was not afraid to try the case and they were prepared to proceed to trial.

Watts provided conflicting testimony about Smith's discussion with him on January 20. According to Watts, when Smith met with him, Smith "didn't go into detail" about the plea offer. He denied Smith discussed the "pros and cons" of accepting the plea. He testified Smith suggested they could win the case based on the fact "there[] [was] no physical force."

However, Smith's and Watts' testimony on whether Smith ultimately advised Watts to accept or reject the plea was uncontroverted. Smith testified about a document

6

he prepared and Watts signed which allegedly stated Watts decided to reject the State's plea offer. The document was admitted at the evidentiary hearing but is not included in the record on this appeal. Smith testified he "didn't make any recommendation" about whether Watts should accept or reject the plea, and "in the end [Watts] opted to reject it and go to trial." When asked whether Smith discussed with him whether he should accept or reject the plea, Watts responded, "No."

Watts' counsel on direct appeal, Michelle Davis, also testified. When asked if she remembered the prosecutor telling the jury during closing argument Radenberg was honest, she responded: "I don't recall that, but yes, that is a possible issue because that is vouching, and that is an opinion about credibility." She went on to state: "In this case I probably didn't feel like it was a good issue, because the victim's testimony really wasn't the turning point of this case. . . . I thought the victim was a pretty good witness for the defense in a lot of ways."

The district court denied Watts' motion. The court made several findings relevant to this appeal. It found Smith reviewed the Hawes Video before he met with Watts on January 20, 2010, based on Smith's testimony and certain time-stamped emails between Smith and the prosecutor admitted at the hearing but not included in the record on this appeal. The court found Watts failed to establish under the second prong of *Strickland* he was prejudiced by Smith's alleged failure to review or discuss the Hawes Video with him. The district court found both Hasty and Watts' public defender had advised Watts to accept the State's plea offer and, therefore, Watts did not establish he was prejudiced under *Strickland* by Smith's failure to ultimately recommend whether to accept or reject the plea. It found Watts did not establish he was prejudiced under *Strickland* by Davis' decision not to argue the prosecutor improperly vouched for Radenberg during closing arguments because the argument would not have succeeded on direct appeal. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

7

Although Watts has counsel on this appeal, he has also filed a pro se supplemental brief. In his pro se brief, he raises multiple issues not addressed in his attorney's brief. Only one of Watts' pro se arguments is properly before this court. We will address it and decline to address the issues improperly raised.

ANALYSIS

Watts, in his counsel's brief and his pro se brief, limits his arguments to the issues set out below. The other arguments he raised in his K.S.A. 60-1507 motion but does not brief on this appeal are waived or abandoned. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are considered waived or abandoned).

*Plea counsel was not ineffective during the plea negotiations.*

Watts argues Smith's representation of him during the plea negotiation process was constitutionally ineffective in two respects: First, Smith did not discuss the Hawes Video with him and, therefore, he could not make a knowing decision about whether to accept the State's plea offer; and second, Smith did not recommend to Watts whether to accept or reject the State's plea offer. The district court heard the evidence and denied Watts relief.

An ineffective assistance of counsel claim involves mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, this court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law; this court reviews the district court's ultimate legal conclusions de novo. *Fuller v State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

8

Substantial evidence is legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). This court does not reweigh the evidence or reassess the credibility of witnesses. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Instead, this court accepts as true the inferences supporting the district court's findings. *State v. Morton*, 286 Kan. 632, 641, 186 P.3d 785 (2008).

After losing a direct appeal, a prisoner can bring a habeas corpus action under K.S.A. 60-1507. Under K.S.A. 2019 Supp. 60-1507(b), the district court must set aside a movant's conviction if "there has been such a denial or infringement of the *constitutional rights* of the prisoner as to render the judgment vulnerable to collateral attack." (Emphasis added.) One such constitutional right is the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting federal constitutional standard for ineffective assistance of counsel under *Strickland*, 466 U.S. at 687.) Thus, ineffective assistance of counsel is a "denial or infringement" of a constitutional right making the district court's judgment vulnerable to collateral attack. See K.S.A. 2019 Supp. 60-1507(b).

A defendant's Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *State v. Szczygiel*, 294 Kan. 642, 646, 279 P.3d 700 (2012). During plea negotiations, a defendant is entitled to the effective assistance of competent counsel. *Lafler*, 566 U.S. at 162; *Szczygiel*, 294 Kan. at 646.

To prevail on a claim that counsel was ineffective during the plea bargaining process, a defendant must establish:  (1) counsel's performance was deficient under the totality of the circumstances; and (2) prejudice, i.e., there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Hill v.*

9

*Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying the two-part *Strickland* test to challenges to guilty pleas based on ineffective assistance of counsel); *Strickland*, 466 U.S. at 687.

Under the performance prong of *Strickland*, a defendant must show counsel's performance fell below an objective standard of reasonableness. This court strongly presumes counsel's conduct fell within the wide range of reasonable professional assistance. Even so, counsel during the plea bargaining process has an obligation to advise a defendant on the range of possible penalties and discuss the possible choices available to the defendant. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

In the context of pleas, to establish prejudice under *Strickland*, the defendant must show the outcome of the plea bargaining process would have been different with competent advice. When, as here, counsel's alleged ineffective advice led not to the acceptance of a plea offer—but to a rejection—prejudice turns on the defendant having to stand trial. *Lafler*, 566 U.S. at 163-64. In such circumstances,

> "[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 566 U.S. at 164.

Here, neither of Watts' ineffective assistance of counsel claims are persuasive. Watts fails to establish prejudice. We will proceed to the prejudice prong of the *Strickland* test without addressing the first prong because doing so will intelligently resolve the issue. 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on

10

the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

*Watts has shown no prejudice.*

Watts argues Smith's representation was constitutionally ineffective because he did not review or discuss the Hawes Video with him. He claims the "version of facts represented [i]n the video clearly establish a taking by force or threat" and "would very likely have influenced his decision . . . to accept or reject the State's plea offer."

At the evidentiary hearing, Smith testified he met with Watts on January 20, 2010, the day the State's plea offer was set to expire. Smith recalled watching a video in the prosecutor's office he believed to be the Hawes Video, but he could not recall if he watched the video before or after he visited Watts on January 20. Based on Smith's testimony and certain time-stamped emails between Smith and the prosecutor admitted at the hearing but not included in the record on this appeal, the district court found Smith reviewed the Hawes Video *before* he met with Watts on January 20, 2010.

Watts challenges the district court's fact-finding, alleging Smith did not "obtain, review, and properly analyze the Hawes [V]ideo" before he met with him on January 20. But this court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *Chandler*, 307 Kan. at 668. This court cannot change the district court's findings; Smith reviewed the Hawes Video before he met with Watts on January 20. Watts does not allege Smith failed to review or discuss with him any of the other evidence in the case.

But the district court did not specifically find nor does the record show whether Smith discussed the Hawes Video with Watts at the January 20 meeting. It just found Smith had reviewed it. Nonetheless, Watts maintains on appeal Smith did not discuss the

11

video with him. Watts had the burden at the evidentiary hearing to establish whether Smith discussed the video with Watts. See Supreme Court Rule 183(g) (2019 Kan. S. Ct. R. 223). But even if we assume, as Watts asserts, Smith did not discuss the Hawes Video with him, Watts fails to establish prejudice. Under *Lafler*, Watts must show there is a reasonable probability that but for Smith's failure to discuss the Hawes Video with him, he would have accepted the plea offer. *Lafler*, 566 U.S. at 164. He has failed to do so.

The record shows the contents of the Hawes Video would only have corroborated the other evidence Watts already knew the State had against him. Watts was present at the preliminary hearing. At the preliminary hearing, Hawes testified about what Radenberg said on the video. At the evidentiary hearing, Smith testified the majority of their conversation on the plea agreement dealt with the evidentiary impact Hawes' testimony might have at trial. Smith testified he discussed with Watts the various means under which Watts could be convicted of aggravated kidnapping and the evidence supporting those means: Whether Watts dragged Radenberg by the hair from the apartment to the car as Hawes testified at the preliminary hearing, whether he forced her to enter the car by threat, or whether he held her against her will in the car. Although Hawes' testimony at the preliminary hearing and Radenberg's statement in the video conflicted as to the *exact manner* in which Watts forced Radenberg into the car, they both showed Watts physically forced her into the car.

Therefore, even if Smith did not specifically discuss the contents of the Hawes Video with Watts, Smith discussed with Watts evidence reflecting Watts physically forced Radenberg into the car—evidence which, if found by the jury, would support his conviction for kidnapping. Watts fails to show there is a reasonable probability he would have accepted the State's plea offer if he was aware of the statements contained in the Hawes Video. See *Lafler*, 566 U.S. at 164.

Additionally, *Lafler* requires Watts to establish there is a reasonable probability that but for Smith's failure, the prosecution would not have withdrawn the plea, the district court would have accepted the terms of the plea, and his conviction and/or sentence under the offer's terms would have been less severe than the judgment and/or sentence the district court actually imposed. See *Lafler*, 566 U.S. at 164. In his brief, Watts references testimony presented on the State's alleged plea offer at the evidentiary hearing, but he does not include the State's final plea offer in the record on this appeal. It is Watts' burden to designate a record supporting his claim. See *State v. Miller*, 308 Kan. 1119, 1157, 427 P.3d 907 (2018). In any event, Watts does not brief or argue there is a reasonable probability that but for Smith's failure, the prosecution would not have withdrawn the plea and the district court would have accepted the terms of the plea.

Watts has not shown he suffered prejudice from Smith's alleged failure to specifically discuss the Hawes Video with him.

*No prejudice when Smith failed to recommend he accept or reject the plea.*

Watts next argues Smith's representation was constitutionally ineffective because Smith did not ultimately recommend whether to accept or reject the State's plea offer.

The State responds Watts abandoned this issue because he does not cite to any authority for his position. See Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34); *State v. Tague*, 296 Kan. 993, 1001-02, 298 P.3d 273 (2013) (argument abandoned because it is not supported with pertinent authority). However, given these specific facts we will address the issue.

Generally, ineffective assistance of counsel claims involving the rejection of a plea are based on counsel specifically encouraging the defendant to reject the State's plea offer. See *Lafler*, 566 U.S. at 161 (defendant rejected plea after counsel supposedly

13

persuaded him prosecution would be unable to prove intent in homicide case); *Quinton v. State*, No. 112,439, 2015 WL 7693691, at *9-10 (Kan. App. 2015) (unpublished opinion) (Defendant rejected plea after counsel "talked [him] out of accepting it" because counsel believed the victim's testimony was "particularly susceptible to cross-examination.").

Here, Watts does not allege Smith encouraged him to reject the plea but rather Smith made no recommendation to him at all. Smith's and Watts' testimony on this issue was uncontroverted. Smith testified he "didn't make any recommendation" about whether Watts should ultimately accept or reject the plea, and "in the end [Watts] opted to reject it and go to trial." When asked whether Smith discussed with him whether he should accept or reject the plea, Watts responded, "No."

It is well established a defendant has the final say over what plea to enter. *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016). At a minimum, during the plea negotiation process, counsel must advise a defendant on the range of possible penalties and discuss the choices available to the defendant. *Kelly*, 298 Kan. at 970. The record reflects Smith discussed with Watts his options and how different aspects of the evidence could support his conviction for aggravated kidnapping. We have been unable to find any Kansas caselaw reflecting counsel's duty or obligation to give a defendant his or her professional recommendation on whether to accept or reject a plea. It would appear the best practice would be for counsel to explain to his or her client the options available—which was done by Smith—and then let the client make the ultimate decision on whether to take the plea deal or go to trial. After all, the client will be the one serving any sentence imposed. The State cites a Second Circuit Court of Appeals case for the proposition: "[D]efense counsel '"must give the client the benefit of counsel's professional advice on th[e] crucial decision"' of whether to plead guilty." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000). *Purdy* is not binding on this court; however, we do consider it.

14

But even if, in line with *Purdy*, Smith had a professional duty to recommend to Watts whether to accept or reject the State's plea offer, Watts' argument still fails because the record reflects that Hasty satisfied that duty by recommending to Watts that he take the plea offer. He has not established any prejudice under *Strickland*. See 466 U.S. at 687.

Given the record as a whole, Watts relied on Hasty's and Smith's advice when he ultimately rejected the plea. Hasty and Smith both represented Watts on January 20, 2010, the day Watts allegedly signed a document stating he made a decision to reject the State's plea offer. Although Watts and Hasty provided conflicting testimony at the evidentiary hearing on whether Hasty advised Watts to accept the plea, the district court resolved this evidentiary conflict in favor of Hasty. Watts does not challenge this fact-finding on appeal and even admits Hasty recommended he accept the plea offer.

We cannot reweigh the evidence and we accept the district court's finding Hasty recommended Watts take the plea deal. Although Smith did not specifically recommend to Watts he accept the plea offered, he did advise Watts about the evidence supporting the various means under which Watts could be convicted. The attorney who advised Watts to accept the plea—Hasty—regularly practiced in criminal defense. Ultimately, Watts rejected Hasty's advice and opted to roll the dice and go to trial.

The record reflects Watts was advised by Hasty to accept the State's plea; his claim of prejudice by Smith's failure to make such a recommendation is not persuasive. Additionally, he fails to brief or argue the other prejudice requirements set forth in *Lafler*. See 566 U.S. at 164.

15

*Watts' appellate counsel on direct appeal was not ineffective when she did not raise a particular prosecutorial error issue.*

Watts next claims his counsel on direct appeal, Davis, was ineffective because she did not brief or argue the prosecutor erred during closing argument when she said: "'[Radenberg has] always been honest.'"

As previously stated, our standard of review for ineffective assistance of counsel claims involve mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, this court reviews the district court's factual findings for substantial competent evidence and reviews the district court's legal conclusions de novo. *Fuller*, 303 Kan. at 485.

Prosecutorial error may be raised for the first time on direct appeal, despite the lack of contemporaneous objection at trial. *Bledsoe v. State*, 283 Kan. 81, 88, 150 P.3d 868 (2007). But prosecutorial error is not properly raised in a K.S.A. 60-1507 motion unless it affected a constitutional right and there is a showing of exceptional circumstances excusing the failure to appeal on that issue. Supreme Court Rule 183(c)(3) (2019 Kan. S. Ct. R. 228); *Bledsoe*, 283 Kan. at 88.

Exceptional circumstances include:

"(1) ineffective assistance of trial counsel in failing to object regarding an issue; (2) ineffective assistance of direct appeal counsel in failing to raise the issue; or (3) newly discovered evidence or an unforeseeable change in circumstances or constitutional law unknown to counsel and the movant at the time of trial and direct appeal." *Bledsoe*, 283 Kan. at 88-89.

Here, Watts did not argue exceptional circumstances existed to raise purely trial errors in his K.S.A. 60-1507 motion. Although he did argue exceptional circumstances existed in his response to the State's motion to dismiss, it was after the time had run to

16

timely file a K.S.A. 60-1507 motion. See K.S.A. 2019 Supp. 60-1507(f). So the district court could have refused to consider Watts' amendment to his K.S.A. 60-1507 motion as untimely. See *Calhoun v. State*, 56 Kan. App. 2d 185, 194-95, 426 P.3d 519 (2018), *rev. denied* 309 Kan. 1347 (2019).

Instead, the district court considered the merits of the ineffective assistance of appellate counsel argument Watts raises on appeal. And Watts' arguments involving appellate counsel's ineffective assistance constitutes an exceptional circumstance. See *Bledsoe*, 283 Kan. at 88-89. Therefore, we will consider Watts' arguments involving prosecutorial error to the extent his arguments are raised within his ineffective assistance of appellate counsel claim.

The test for ineffective assistance of appellate counsel is the same as ineffective assistance of trial counsel. *Miller v. State*, 298 Kan. 921, 930-31, 318 P.3d 155 (2014) (applying *Strickland* test to performance of counsel handling direct appeal). To prevail on an ineffective assistance of appellate counsel claim, Watts must prove: (1) counsel's performance fell below an objective standard of reasonableness; and (2) prejudice. *Strickland*, 466 U.S. at 687. Generally, the "failure to raise an issue on direct appeal is not per se ineffective assistance. . . . 'Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit.'" *Miller*, 298 Kan. at 932.

We will proceed directly to the prejudice prong of *Strickland* without addressing the first *Strickland* prong because it is dispositive of Watts' claims. See *Strickland*, 466 U.S. at 697. To establish prejudice, Watts must show there is a reasonable probability that, but for Davis' failure to raise this prosecutorial error issue, the appeal would have succeeded. See *Miller*, 298 Kan. at 934. If Davis would have raised the issue, the appellate court would have examined the instance of alleged vouching to determine

whether it was error, and, if so, whether the error prejudiced Watts. See *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

To determine whether the prosecutor erred, we must decide "whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. at 109. If error is found, the State must show beyond a reasonable doubt the error complained of will not or did not affect the outcome of the trial given the entire record. 305 Kan. at 109.

We will assume for purposes of this appeal, without deciding, the prosecutor committed error when she vouched for Radenberg's credibility by saying: "She's always been honest." Thus, we will proceed directly to the prejudice prong from *Strickland*.

Even with our assumption the prosecutor erred, the error was not reversible. Evidence of Watts' prior bad acts toward Radenberg was admitted at trial. At trial, Radenberg testified that in 2008 Watts hit her in the jaw during the course of a physical altercation between Watts and her ex-boyfriend. She testified after the incident, her doctors told her that her jaw was "slightly dislocated." On cross-examination, defense counsel used the doctor's medical report from the 2008 incident to point out Radenberg just had TMJ, not a dislocated jaw. In closing argument, defense counsel stated: "These prior incidents, I asked many questions to try to . . . put some of this into context . . . . Her jaw wasn't really dislocated. She has TMJ. Does it really matter? No, [b]ecause he hit her. *But it does show a little bit some exaggeration*." (Emphasis added.)

As defense counsel conceded, Radenberg's testimony on the extent of her injuries from a prior, unrelated incident was tangential to the offense for which Watts was on trial. The district court instructed the jury evidence of Watts' prior bad acts were to be considered solely for the purposes of proving Watts' intent, establishing the discordant

18

relationship between Watts and Radenberg, and to corroborate Radenberg's testimony. The jury was also instructed not to consider Watts' prior bad acts as evidence of his propensity for criminal behavior. Further, the challenged statement was an isolated occurrence. Immediately after the prosecutor made the statement, she properly explained to the jury what it should consider in evaluating Radenberg's credibility.

Based on the context in which the prosecutor's statements were made and the isolated statement, we find there is no reasonable probability the prosecutor's comment would have affected the jury's verdict. See *Sherman*, 305 Kan. at 111.

We are firmly convinced the prior panel of this court would have upheld Watts' conviction even if Davis had raised this prosecutorial error claim in Watt's direct appeal. Watts fails to show under the prejudice prong of *Strickland* the prosecutorial error issue would have succeeded if raised in his direct appeal. See *Miller*, 298 Kan. at 930-31. Because Watts was not prejudiced by Davis' performance, his ineffective assistance of appellate counsel claim fails.

Watts also argues his trial counsel were ineffective because they failed to object to the prosecutor's statement during closing argument. But Watts did not raise this argument in his K.S.A. 60-1507 motion. He fails to argue why this court should consider an argument not raised below for the first time on appeal. See Supreme Court Rule 6.02(a)(5). His argument on this point is therefore waived and abandoned. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014).

*Issues raised incidentally, but not argued*

In his counsel's brief, Watts incidentally raises but does not argue two additional issues: (1) The district court erred when it denied his claim the State sought to bias or influence Radenberg when it played for her recorded phone conversations between Watts

19

and another woman while Watts was in jail; and (2) the district court erred when it denied his claim the State committed prosecutorial error when it allegedly "elicit[ed] testimony regarding his refusal to submit to interrogation in violation of his Fifth Amendment privilege." Watts cites no authority supporting either issue, and he concedes "there is no case law available to sustain" the first issue. All points incidentally raised and not argued are deemed abandoned. *Lowery*, 308 Kan. at 1231. Watts has abandoned these issues for the purposes of this appeal.

*Pro se issues*

Along with his counsel's brief, Watts filed a pro se supplemental brief arguing multiple issues not addressed in his attorney's brief. Only one of these issues is properly before this court: Whether the district court erred when it found Watts' trial counsel were not ineffective for failing to investigate a potential defense witness to present at trial. We will first address the issues improperly raised and then proceed to Watts' claim his trial counsel failed to investigate a potential witness.

Watts raised the following issues not properly before us:

- The Hawes Video was improperly considered by the K.S.A. 60-1507 court even though its admission was stipulated to by both parties.
- The district court incorrectly found Hasty's testimony was more credible than Watts regarding whether Hasty told Watts to take the plea offer.
- The public defender appointed to represent him was ineffective when the district court failed to address whether he was ineffective.
- Hasty did not properly discuss with Watts how the Hawes Video was inculpatory even though it was not admitted as evidence at his jury trial.
- The district court improperly applied *Lafler,* even though it discussed and applied it in analyzing Watts' claim Smith's representation was ineffective.

20

- His appointed counsel on this appeal was ineffective because he abandoned on appeal some of his K.S.A. 60-1507 issues he raised before the district court.
- Cumulative trial errors denied him a fair trial.

We decline to address his improperly raised issues.

Now we move to address the issue properly before this court. Watts claims the district court erred when it found his trial counsel was not ineffective for allegedly failing to investigate his ex-girlfriend as a potential defense witness. We address this argument because Watts raised it in his K.S.A. 60-1507 motion and at the evidentiary hearing.

In its order denying Watts K.S.A. 60-1507 relief, the district court made a factual finding "neither [Hasty] nor [Smith] were familiar with [Watts' ex-girlfriend] as a potential witness." At the evidentiary hearing, Watts testified he told Hasty and Smith about his ex-girlfriend and asked them to contact her. Hasty testified she had discussed with Watts potential witnesses to present at trial, but Watts never told her his ex-girlfriend could act as a defense witness. Smith testified he thought he contacted Watts' ex-girlfriend, but only for the purpose of raising funds for Watts' defense; he could not recall whether he contacted her for purposes of trial.

As indicated above, even if Watts' trial counsels' performance was deficient in some way because they failed to investigate Watts' ex-girlfriend as a potential defense witness, Watts must also establish prejudice. To establish prejudice, he must show a reasonable probability that, but for trial counsels' deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687.

Watts fails to establish prejudice. Even if we assume without deciding Watts' trial counsel was ineffective, Watts' claim still fails because he cannot show prejudice. The

record shows even if Watts' trial counsel would have investigated Watts' ex-girlfriend as a potential defense witness, her testimony would have been inadmissible hearsay. See K.S.A. 2019 Supp. 60-460 ("Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible.").

Watts testified at the evidentiary hearing about the testimony his ex-girlfriend could have offered at trial:

> "[Her testimony] would have dis[proved] the—that I went back to [Radenberg's] apartment to keep her from . . . meeting up with another guy; and all the things the prosecutor was saying about me acting out of jealousy, because I had plans after I left [the bar] because I broke up with [Radenberg] at [the bar]; and after that, I had plans to meet [my ex-girlfriend] at my house. But I didn't have my house key because I left them at [Radenberg's] house."

Watts' testimony shows the only testimony his ex-girlfriend could have offered about the night of the incident were statements *Watts made to her*, i.e., his plan to meet his ex-girlfriend at his house later that night. Nothing in the record indicates Watts' ex-girlfriend was a witness on the night of the incident. Watts did not testify at trial. Thus, any statements Watts made to his ex-girlfriend about the night of the incident to prove the truth of the matter asserted would have been inadmissible hearsay.

Affirmed.